TO BE PUBLISHED

# Supreme Court of Kentucky

## 2015-SC-000599-I

FINAL

DATE 10/20/16 Kim Redmon, DC

STANLEY M. CHESLEY                                                                                    MOVANT

ON REVIEW FROM COURT OF APPEALS
V.                              CASE NO. 2015-CA-001066-I
BOONE CIRCUIT COURT NO. 05-CI-00436

MILDRED ABBOTT, ET AL.                                                          RESPONDENTS

## OPINION AND ORDER

## DENYING INTERLOCUTORY RELIEF

Stanley M. Chesley, pursuant to Kentucky Rule of Civil Procedure (CR) 65.09, moves this Court to vacate or modify the October 7, 2015, order entered by the Court of Appeals, which denied Chesley's Motion for Interlocutory Relief under CR 65.07. As the order entered by the Boone Circuit Court was not an injunction, temporary or otherwise, it is not properly the subject of an interlocutory relief motion. Therefore, we affirm the judgment of the Court of Appeals.

## FACTUAL AND PROCEDURAL BACKGROUND

In the mid-1990s, the popular weight-loss drug fen-phen was removed from the market after being linked to heart damage and other dangerous side-effects. In 1998, attorneys Shirley A. Cunningham, Jr., William J. Gallion, and Melbourne Mills, Jr., filed a prospective class action lawsuit against the

manufacturer of fen-phen, American Home Products (American Home) on behalf of Kentucky plaintiffs who alleged injuries caused by their use of the drug. While the three attorneys operated separate law practices, they pooled their resources in a collective effort to pursue the case. The case they filed, *Darla S. Guard, et al. v. American Home Products, Inc., et al.*, Boone Circuit Court Case No. 98-CI-795 (*Guard*) was certified as a class action in May 1999.

While the Kentucky litigation was pending, American Home was also the defendant in a multi-district class-action lawsuit in Pennsylvania. That federal litigation resulted in a nationwide class-action settlement in August 2000. However, on the advice of counsel, the Kentucky plaintiffs opted out of the nationwide settlement to pursue their claims in state court. Subsequently, Chesley, who had been involved in the national settlement, initiated a fen-phen lawsuit on behalf of a few clients in Boone Circuit Court. Despite their initial opposition, Cunningham, Gallion, and Mills eventually agreed to consolidate Chesley's case with the *Guard* case. This was agreed to by the *Guard* attorneys due to Chesley's national reputation and his experience in the national fen-phen settlement.

With the claims merged, the attorneys entered into an arrangement outlining the role each attorney would perform in the litigation. It was agreed that Gallion would serve as lead trial counsel, Cunningham and Mills would enroll clients and maintain client contact information, and Chesley would serve as lead negotiator in the effort to secure a settlement with American Home. Additionally, if Chesley succeeded in reaching a settlement with American

2

Home, he would receive a share – initially 27 percent, but later reduced to 21 percent – of the attorney fees owed to Cunningham, Gallion, and Mills under their respective retainer agreements.

On May 1, 2001, a settlement was reached with American Home. The settlement agreement required the decertification of the *Guard* case as a class action and the dismissal of all individual claims. In exchange for this, American Home agreed to pay the aggregate sum of $200 million which was to be disbursed to the 431 clients for whom Mills, Cunningham, and Gallion had fee contracts. The claims of the 143 other individuals who had joined the class action, but who had not personally retained any of the class attorneys, were to be dismissed without prejudice. Additionally, American Home left it to Mills, Cunningham, and Gallion to determine how much of the $200 million fund would be allocated to each client.

Contrary to the terms of the settlement agreement, Mills, Cunningham, and Gallion failed to inform their clients about the total settlement amount. Nor were the clients made aware of the provision that American Home could terminate the settlement if less than 95% of the claimants accepted the settlement agreement by September 1, 2001. While Mills, Cunningham, and Gallion obtained the necessary releases, they did so by failing to reveal essential information and making misleading statements to their clients.

After the class action was decertified by the circuit court, the *Guard* attorneys distributed approximately $73 million to their clients. A further $20 million was diverted to the creation of the Kentucky Fund for Healthy Living

(KFHL). The balance of the money, approximately $106 million, was divided among the attorneys for the class.

A subsequent investigation by the Kentucky Bar Association (KBA) uncovered the excessive payments to the *Guard* attorneys. After the investigation became public, the Respondents filed a law suit requesting an accounting of the settlement money, disgorgement of misappropriated funds, and a judgment against the class attorneys for monies paid in excess of the contingent fee contracts.

The circuit court granted partial summary judgment to the Respondents after determining that Cunningham, Gallion, and Mills had breached their fiduciary duty by violating their contingent fee agreements. On the issue of compensatory damages for the breach of fiduciary duty, the trial court concluded that Cunningham, Gallion, and Mills owed their clients approximately $42 million. Additionally, Cunningham, Gallion, and Mills were adjudged to be jointly and severally liable. As to Chesley, the circuit court concluded that genuine issues of material fact remained regarding his liability and denied the motion for summary judgment against him.

On appeal to the Court of Appeals, Cunningham, Gallion, and Mills challenged the summary judgment determination on the breach of fiduciary duty claim and the assessment of joint and several liability. The Court of Appeals reversed the circuit court's award of summary judgment determining that genuine issues of material fact remained unresolved. The denial of

summary judgment against Chesley was deemed not appealable and accordingly was not reviewed by the Court of Appeals.

Subsequently, this Court granted discretionary review. In *Abbott v. Chesley*, 413 S.W.3d 589 (Ky. 2013), we determined that the circuit court properly entered summary judgment against Cunningham, Gallion, and Mills on the breach of fiduciary duty claim. Further, we agreed with the circuit court that Cunningham, Gallion, and Mills are subject to joint and several liability. As to the summary judgment determination against Chesley, we agreed with the Court of Appeals that the circuit court's order denying summary judgment was not appealable. The case was then remanded to the circuit court.

In August 2014, the circuit court granted the Respondents' motion for summary judgment against Chesley.[1] The circuit court concluded that summary judgment was appropriate on the Respondents' breach of fiduciary duty claims through the doctrine of issue preclusion or collateral estoppel. In reaching its decision, the circuit court reasoned that Chesley had a full and fair opportunity to present his case with respect to these claims during the proceedings in *Kentucky Bar Ass'n v. Chesley*, 393 S.W.3d 584 (Ky. 2013). Finding that no genuine issues of material fact existed, the circuit court determined that Chesley was jointly and severally liable with Cunningham, Gallion, and Mills to the Respondents for $42 million. Subsequently, Chesley

---

[1] The circuit court later entered two amended orders dated September 19, 2014, and October 22, 2015, which modified the wording of the order as to the calculation date for and the collection of annual interest. Additionally, both amended orders noted that "[t]his Order is Final and Appealable. There is no just cause for delay."

appealed the circuit court's judgment and rulings, but did not post a supersedeas bond to guarantee enforcement of the judgment would be tolled during his appeal.[2]

Due to his actions during the *Guard* settlement, Chesley was permanently disbarred from the practice of law in Kentucky.[3] Afterwards, Chesley retired from the practice of law in Ohio. Chesley's former law firm, Waite, Schneider, Bayless, & Chesley Co., L.P.A. (WSBC) is an Ohio legal professional association formed under Chapter 1785 of the Ohio Revised Code. Under Section 1785.05, a professional organization may only issue its capital stock to those individuals legally authorized to render the same professional service for which that association was organized. With Chesley's retirement from the practice of law, he was no longer permitted to be a shareholder of WSBC.[4]

As such, Chesley transferred his ownership interest in WSBC to his Ohio lawyer, Thomas Rehme, to be held in trust during the winding up period of WSBC. Both prior to and after Chesley's Kentucky disbarment and his

---

[2] Chesley's appeals of the circuit court's judgment and rulings are each styled as *Chesley v. Abbott*, 2014-CA-001725, 2014-CA-001900, and 2014-CA-001984, and are currently pending before the Court of Appeals.

[3] *Chesley*, 393 S.W.3d at 602. Additionally, due to their improper use of the *Guard* case settlement fund Cunningham, Gallion, and Mills were also permanently disbarred from the practice of law in Kentucky. *See Cunningham v. Kentucky Bar Ass'n*, 266 S.W.3d 808 (Ky. 2008); *Gallion v. Kentucky Bar Ass'n*, 266 S.W.3d 802 (Ky. 2008); and *Kentucky Bar Ass'n v. Mills*, 318 S.W.3d 89 (Ky. 2010). Further, an associate of Gallion and the circuit court judge who presided over the *Guard* settlement were disbarred for their actions in the case. *See Kentucky Bar Ass'n v. Helmers*, 353 S.W.3d 599 (Ky. 2011) and *Kentucky Bar Ass'n v. Bamberger*, 354 S.W.3d 576 (Ky. 2011).

[4] It is noteworthy that Chesley was the sole shareholder of WSBC.

6

retirement from the Ohio bar, he transferred a total of $59 million from his personal accounts to WSBC.

On June 9, 2015, the circuit court conducted a hearing on Respondents' motion to transfer Chesley's beneficial interest in the trust to satisfy the $42 million judgment. The circuit court acknowledged that it had personal jurisdiction over Chesley and that there had been a valid judgment entered against him. As such, the circuit court viewed the Respondents' motion as legitimate effort to secure the circuit court's assistance in collecting an outstanding judgment. Accordingly, the circuit court ordered Chesley on June 23, 2015, to direct Rehme to make all payments derived from Chesley's holdings in the shares of WSBC payable to the Respondents through their counsel.

In response, Chesley requested relief from the Court of Appeals under CR 65.07. The Court of Appeals denied the motion, and his appeal to this Court followed.

## ANALYSIS

CR 65.01 authorizes a party to request injunctive relief from the circuit court in the form of a restraining order, temporary injunction, or permanent injunction in a final judgment. When the circuit court by interlocutory order has denied, dissolved, modified, or granted a temporary injunction, the adversely affected party is able to seek relief from the Court of Appeals pursuant to CR 65.07. After an adverse decision in that court, a party may move this Court pursuant to CR 65.09 to review the judgment of the Court of

7

Appeals. However, the decision as to whether or not to review the order of the Court of Appeals is discretionary with the Court. CR 65.09.

While discretionary, the Court's review is "limited to those cases which demonstrate extraordinary cause." *Nat'l Collegiate Athletic Ass'n v. Lasege*, 53 S.W.3d 77, 84 (Ky. 2001); CR 65.09 ("Such a motion will be entertained only for extraordinary cause shown in the motion."). Demonstrating extraordinary cause is not an easy task – in fact we have recognized that the movant faces an "enormous burden" when requesting relief pursuant to CR 65.09. *Courier-Journal, Inc. v. Lawson*, 307 S.W.3d 617, 620 (2010) (quoting *Kindred Hosps. Ltd. P'ship v. Lutrell*, 190 S.W.3d 916, 919 (Ky. 2006)). However, an abuse of discretion by the courts below can constitute extraordinary cause. *Lasege*, 53 S.W.3d at 84.

Chesley contends that the Court of Appeals and the circuit court committed an abuse of discretion. With regard to the circuit court, Chesley claims that it exceeded its authority by ordering Chesley to transfer funds being held in a foreign jurisdiction. Additionally, Chesley argues that the judgment of the Court of Appeals deprived him of his right to appellate review from the circuit court's order, which he labels a "mandatory injunction." However, in reviewing Chesley's motion, we conclude that his request for relief under CR 65.09 is procedurally improper.

As a prerequisite for obtaining interlocutory relief from an order of the circuit court under CR 65.07 or CR 65.09, the order at issue must be an injunction. Chesley argues that the circuit court's June 23, 2015, order

8

granted mandatory injunctive relief and was entered prior to the adjudication of all outstanding claims. As such, Chesley concludes that the order was a temporary injunction and subject to appellate review under CR 65.07 and CR 65.09.[5] However, Chesley is mistaken in his characterization of the circuit court's June 23, 2015 order.

On August 1, 2014, the circuit court granted summary judgment against Chesley for Respondents' breach of fiduciary duty claims. In the final amended version of the order, entered October 22, 2014, Chesley was also held to be jointly and severally liable with Cunningham, Gallion, and Mills for the existing judgment amount of $42 million. Additionally, the October 22, 2014, order expressly noted that it was a final and appealable order. Subsequently, Chesley filed a motion for the circuit court to reconsider its order and a motion to vacate the judgment pursuant to CR 60.02. Both motions were denied. Afterwards, Chesley appealed the circuit court's summary judgment order to the Court of Appeals.

However, Chesley declined to post a supersedeas bond to stay enforcement of the judgment pending his appeal. Subsequently, the circuit court entered its June 23, 2015, order requiring Chesley to transfer his beneficial interest in his Ohio trust to the Respondents to satisfy the $42

_____

[5] In support of his argument, Chesley directs the Court to review *Bahar v. Lyon Fin. Servs. Inc.*, 330 S.W.3d 379, 386 (Tex. Ct. App. 2010). In *Bahar*, the Court of Appeals of Texas, concluded that a turnover order issued pursuant to a default judgment in a foreign jurisdiction, acted as a mandatory injunction against the judgment debtor. *Id.* However, that determination was rooted in an analysis of Texas's turnover statute. *Bahar*, is not dispositive in the case at bar. Rather, the outcome of this case is governed by the application of the Kentucky Rules of Civil Procedure.

million judgment. Chesley maintains that the circuit court's order is a temporary injunction as it occurred prior to a final judgment adjudicating all the claims against him.

A temporary injunction generally functions to hold the status quo until the merits of an action can be decided. *Curry v. Farmers Livestock Mkt.*, 343 S.W.2d 134, 135 (Ky. 1961). Although the circuit court may grant a temporary injunction, it is only empowered to do so during the pendency of the action. *Price v. Paintsville Tourism Comm'n*, 261 S.W.3d 482, 484 (Ky. 2008). While all the claims against Chesley have yet to be resolved, the circuit court has entered a final judgment on the breach of fiduciary duty claims.

Under CR 54.02, where a case involves multiple claims, the circuit court is permitted to "grant a final judgment as to fewer than all the claims, and hence to make possible an immediate appeal, upon a determination that there is no just reason for delay." *Shawnee Telecom Res., Inc. v. Brown*, 354 S.W.3d 542, 549 (Ky. 2011) (citing *Watson v. Best Fin. Servs.*, Inc. 245 S.W.3d 722 (Ky. 2008)). "Where the judgment truly disposes of a distinct and separable aspect of the litigation, the trial court's determination that there is no just reason for delay will only be disturbed if that discretion was abused." *Id.*

In the case at bar, the circuit court under CR 54.02 entered a final judgment on Respondents' breach of fiduciary duty claims. The circuit court was empowered to enter a valid final judgment on the breach of fiduciary duty claims despite the fact that there were other collateral claims outstanding. The circuit court's order did not concern those issues and they remain to be

adjudicated. Rather, the circuit court by entering a final judgment under CR 54.02, permitted the judgment on the central issue to be appealed to avoid unnecessary delay. As such, there was a final judgment regarding the breach of fiduciary duty claims upon the entry of the circuit court's October 22, 2014, order.

The entry of a final judgment on the breach of fiduciary duty claims is critical in evaluating the character of the circuit court's subsequent June 23, 2015, order. That order, which required Chesley to comply with an unpaid judgment, did not occur during the pendency of the case and therefore cannot be viewed as being a temporary injunction. The circuit court's order did not seek to maintain the status quo until there was an adjudication of the breach of fiduciary duty claims (or any other claims), rather it was entered to give force to that nearly one year-old judgment, a judgment for which Chesley had not sought a stay by filing a supersedeas bond pursuant to CR 62.03. Instead of being an injunction, the June 23, 2015, order was a post-judgment order in furtherance of Respondents' efforts to collect on the outstanding judgment against Chesley. As the order was not an injunction, we agree with the Court of Appeals that the circuit court's June 23, 2015, order is not subject to review under CR 65.07. Accordingly, Chesley is not entitled to relief under CR 65.09.

Due to this determination, Chesley's claims that the circuit court exceeded the scope of its jurisdiction in ordering him to transfer his interest in the Ohio trust to the Respondents are not properly before this Court. Whether the circuit court has the authority, under Kentucky Revised Statute (KRS)

11

426.384, to compel a defendant to transfer property held in a foreign jurisdiction in payment of a judgment is an issue that has yet to be addressed by Kentucky's appellate courts. However, as that issue is not properly before the Court on this CR 65.09 motion, we decline to address it.

As the Boone Circuit Court's order was not an injunction, it is not subject to interlocutory relief. Therefore, Chesley's motion for interlocutory relief pursuant to CR 65.09 from the order of the Court of Appeals is DENIED.

All sitting. All concur.

ENTERED: June 16, 2016.

CHIEF JUSTICE

12

# Supreme Court of Kentucky

2015-SC-000599-I

STANLEY M. CHESLEY                                            MOVANT

ON REVIEW FROM COURT OF APPEALS
CASE NO. 2015-CA-001066-I
V.                   BOONE CIRCUIT COURT NO. 05-CI-00436

MILDRED ABBOTT, ET AL.                            RESPONDENTS

## ORDER DENYING MOTION FOR RECONSIDERATION

The Motion for Reconsideration, filed by the Movant, Stanley M. Chesley, of the Opinion and Order of the Court, entered June 16, 2016, is DENIED.

All sitting. All concur.

ENTERED: October 20, 2016.

_____
CHIEF JUSTICE